**[Cite as *State v. Robinson*, 2020-Ohio-4502.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

MARTIN ROBINSON

    Appellant

C.A. No.     19CA011495

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    18CR099209

DECISION AND JOURNAL ENTRY

Dated: September 21, 2020

HENSAL, Judge.

{¶1} Martin Robinson appeals his convictions in the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} On May 31, 2018, members of the U.S. Marshal's violent fugitive task force went to Mr. Robinson's house to execute two arrest warrants that Mr. Robinson had for not appearing for court. Before the task force deployed, they informed the city's police chief that they would be conducting an operation in the city and learned that they should be cautious because Mr. Robinson had weapons with him when officers had previously interacted with him at his home.

{¶3} Upon arriving at Mr. Robinson's house around noon, members of the task force took positions around the house and began trying to get in touch with Mr. Robinson. They were confident he was home because both of his cars were in his driveway. Calls to Mr. Robinson's cell phone went unanswered, however, as well as announcements that were made over a

loudspeaker. After a couple of hours of no success in reaching Mr. Robinson, leaders of the task force decided that they needed SWAT team assistance.

{¶4} The SWAT team arrived around 4:00 p.m. in two vehicles: a white box truck that was the operations center and a large bullet-proof military-grade vehicle known as an MRAP. The SWAT team stationed the box truck down the street but drove the MRAP through Mr. Robinson's yard and positioned it directly in front of a large bay window. SWAT team negotiators took over trying to get in touch with Mr. Robinson by phone and over the MRAP's loudspeaker. It also enlisted Mr. Robinson's family members and friends to try and reach Mr. Robinson. Those that did reach Mr. Robinson, however, were unable to persuade him to leave his house.

{¶5} After several more hours went by, the SWAT team obtained a search warrant for Mr. Robinson's residence. It then decided to breach the front door of Mr. Robinson's home so that it could drive a robot into the house to get a better view of the interior. According to the leader of the SWAT team, he could have had the team enter the house, but because he had only been with them for a short time, he felt like they had not had enough training together to perfect their communication during that sort of operation.

{¶6} To execute the plan, two SWAT team members went up to the front door, one with a crowbar-like device to pry open the screen door and another with a battering ram for the main door. Other members went up to the remaining windows along the front of the house and covered them with their protective shields while others got into positions where they could provide cover. After the screen door was pried open, the member with the battering ram hit the main door multiple times, but it did not open. He repositioned himself to allow his strikes to be more productive, but this also left him directly in front of the doorway. After another swing, the door opened, followed by the immediate discharge of a shotgun from inside the house. The member with the battering

ram attempted to move out of the way but was struck near his hip. According to members of the SWAT team, during the fire exchange that followed, Mr. Robinson shot at them with a shotgun and a pistol, both out of the front door and the front windows. After tear gas cannisters were shot into the house, a couple of team members were able to approach and drag the shot officer to the back of the MRAP, which drove him to an ambulance that was waiting down the street. When the MRAP returned to its position, members continued providing cover so that those who were positioned near the house could retreat, but the team abandoned its plan to deploy the robot. Following many more hours of attempting to contact Mr. Robinson, he finally exited his house and surrendered to a United States Marshall during the early morning hours of the following day.

{¶7} The Grand Jury indicted Mr. Robinson for one count of attempted aggravated murder, seven counts of attempted murder, 12 counts of felonious assault, one count of tampering with evidence, and one count of inducing panic. Many of the counts included firearm specifications. The trial court appointed Mr. Robinson counsel, but he eventually obtained his own counsel with his appointed counsel remaining as stand-by counsel. A jury found Mr. Robinson guilty of the attempted aggravated murder count, six of the attempted murder counts, eight of the felonious assault counts, and a lower degree of the inducing panic count. The trial court sentenced him to a total of 55 years imprisonment. Mr. Robinson has appealed his convictions, assigning five errors.

## II.

### ASSIGNMENT OF ERROR I

THE GOVERNMENT FAILED TIMELY TO BRING ROBINSON TO TRIAL IN
VIOLATION OF U.S. CONST. AMENDS. VI AND XIV AND OH. CONST.
ART. 1, SEC. 10 (SPEEDY TRIAL).

{¶8} Mr. Robinson argues that the trial court violated his right to a speedy trial. "When reviewing an assignment of error raising a violation of a criminal defendant's right to a speedy trial, this court reviews questions of law de novo." *State v. Bennett*, 9th Dist. Summit No. 21121, 2003-Ohio-238, ¶ 5. We must accept the factual findings of the trial court, however, "if they are supported by some competent, credible evidence." *Id.*

{¶9} Revised Code Section 2945.71(C)(2) provides that a person "against whom a charge of a felony is pending" shall be brought to trial within 270 days "after the person's arrest." If the defendant is held in jail during the pretrial period, each day counts as three for speedy-trial purposes. R.C. 2945.71(E). Acknowledging that "some degree of flexibility is necessary," the General Assembly has "allowed for extensions of the time limits for bringing an accused to trial in certain circumstances." *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 24. "Accordingly, R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *Id.* One of those is "[a]ny period of delay necessitated by reason of a plea * * *, motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(E). Another is "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. 2945.72(H).

{¶10} According to Mr. Robinson, he was arrested on June 1, 2018, and his trial began on February 20, 2019. He argues that there were no significant dispositive motions that he filed that would have tolled the running of his speedy trial time, which he asserts amounted to 415 days. The State, however, argues that Mr. Robinson's speedy trial time did not start on June 1, 2018, because his arrest on that date was for the arrest warrants that had been issued for him in a different county. The State argues that Mr. Robinson's speedy trial time did not actually begin to run until

he was arrested for the offenses in this case, which was on December 18, 2018. It argues that even though Mr. Robinson remained in custody until the date of his trial, his trial was only 64 days later, well within the statutory time limit.

{¶11} The Ohio Supreme Court has held that, for purposes of calculating speedy-trial time, "a charge is not pending until the accused has been formally charged by a criminal complaint or indictment, is held pending the filing of charges, or is released on bail or recognizance." *State v. Azbell*, 112 Ohio St.3d 300, 2006-Ohio-6552, syllabus. This Court has clarified that, even though a felony charge may be "pending" under *Azbell*, a defendant's speedy trial time does not begin to run under Section 2945.71(C)(2) until "the person's arrest." *State v. Wheeler*, 9th Dist. Wayne No. 15AP0025, 2016-Ohio-4690, ¶ 6.

{¶12} Mr. Robinson does not point to anything in the record that indicates that his arrest on the morning of June 1, 2018, was pending the filing of charges in this case. To the contrary, the record shows that Mr. Robinson was arrested on warrants he had from a different county, that he was not indicted in this case until September 12, 2018, and that he was not arrested for those offenses until December 18, 2018. Thus, upon review of the record, we conclude that Mr. Robinson has not established that his right to a speedy trial was violated. Mr. Robinson's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT FAILED TO READ THE JURY A MANDATORY SELF-DEFENSE INSTRUCTION IN VIOLATION OF U.S. CONST. AMEND[S]. VI AND XIV AND OH. CONST. ART. 1, SEC. 10 (RIGHT TO A JURY TRIAL).

{¶13} Mr. Robinson next argues that he was entitled to a self-defense instruction that the trial court refused to give. "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the

fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240. "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45. The abuse of discretion standard implies that a trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶14} A defendant has the burden of establishing the affirmative defense of self-defense by a preponderance of the evidence. *State v. Reed*, 9th Dist. Summit No. 27755, 2016-Ohio-5123, ¶ 15. *But see* R.C. 2901.05(A) (2020). "[If] a defendant has used deadly force, he must prove that '(1) [he] was not at fault in creating the violent situation, (2) [he] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that [he] did not violate any duty to retreat or avoid the danger.'" *State v. Bitting*, 9th Dist. Summit No. 29238, 2019-Ohio-2304, ¶ 9, quoting *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36. "Yet, a person has no duty to retreat from his own home." *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 14. *Accord* R.C. 2901.09(B). One "who, through no fault of [his] own, is assaulted in [his] home may stand [his] ground, meet force with force, and if necessary, kill [his] assailant, without any duty to retreat." *State v. Thomas*, 77 Ohio St.3d 323, 327 (1997). Moreover, a presumption of self-defense arises if an assailant "is in

the process of unlawfully and without privilege to do so entering * * * the residence * * * occupied by the person using the defensive force." R.C. 2901.05(B)(2). The presumption is rebuttable. R.C. 2901.05(B)(4).

{¶15} "[A] trial court need only instruct the jury on self-defense if the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." *Bitting* at ¶ 9, quoting *Reed*, 2016-Ohio-5123, at ¶ 15. "Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.* at ¶ 9, quoting *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978).

{¶16} Mr. Robinson argues that the trial court incorrectly placed a burden on him to establish his entitlement to a self-defense instruction. He also argues that the court refused to give a self-defense instruction because he was at fault for creating the violent situation. According to Mr. Robinson, he did not create the situation and all he did was miss a court date. He further argues that the Revised Code makes it the prosecution's burden to prove that he did not act in defense of his residence.

{¶17} On March 28, 2019, amendments to Section 2901.05 went into effect that changed the burden of going forward and burden of proof as to self-defense. The amendment changed self-defense from an affirmative defense that a defendant must prove to a burden that the prosecution must carry to show that the defendant did not use force in self-defense. R.C. 2901.05(A), (B)(1). Mr. Robinson's trial occurred, however, before those changes went into effect. Accordingly, to the extent that Mr. Robinson's argument relies on the amendments to Section 2905.01, it is without merit.

**{¶18}** Under the former version of Section 2901.05, Mr. Robinson had the burden of establishing his affirmative defense. A presumption of self-defense did not apply because the evidence was undisputed that law enforcement had arrest and search warrants authorizing them to enter Mr. Robinson's home. Former R.C. 2901.05(B)(2)(a) (explaining that the presumption of self-defense does not apply if "[t]he person against whom the defensive force is used has the right to be in * * * the residence * * *."). Mr. Robinson has not pointed to any evidence from the record to support his argument that he was entitled to a self-defense instruction. We, therefore, conclude that the trial court exercised appropriate discretion when it declined to instruct the jury on self-defense. Mr. Robinson's second assignment of error is overruled.

III.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION IN THE FACE
OF INSUFFICIENT EVIDENCE IN VIOLATION OF U.S. CONST. AMEND[S].
VI AND XIV AND OH. CONST. ART. 1, SEC. 10 (DUE PROCESS).

**{¶19}** Mr. Robinson next argues that his convictions are not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶20}  Mr. Robinson's sufficiency argument is based on his contention that the State had to prove that he was not acting in self-defense, which he argues it failed to do.  According to Mr. Robinson, if the trial court had correctly instructed the jury, no reasonable juror would have convicted him because the State did not present any evidence on the self-defense element.  As explained earlier, however, Mr. Robinson's argument is based on an amendment to Section 2901.05 that did not go into effect until after his trial concluded.  Consequently, we conclude that Mr. Robinson has failed to demonstrate that his convictions are not supported by sufficient evidence.  Mr. Robinson's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ALLOWING A CONVICTION AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE.

{¶21}  Mr. Robinson next argues that his convictions were against the manifest weight of the evidence.  When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side.  *Thompkins*, 78 Ohio St.3d 380, at 387.  An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases.  *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶22}  As with his sufficiency argument, Mr. Robinson's manifest weight argument is based on his assertion that it was the State's obligation to establish that he did not act in self-

defense. He argues that, because the evidence was insufficient to support his convictions, his convictions were also against the manifest weight of the evidence. Because Mr. Robinson's argument is based on changes to the law that did not go into effect until after his trial, however, we conclude that it is without merit. Mr. Robinson's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN DENYING COUNSEL'S REQUEST FOR A CONTINUANCE IN VIOLATION OF U.S. CONST. [AMEND.] VI AND OH. CONST. ART. 1, SEC. 10 (EFFECTIVE ASSISTANCE).

{¶23} Mr. Robinson's final argument is that the trial court incorrectly denied his request to continue the trial after he retained new counsel. "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. Accordingly, "appellate courts will not reverse a trial court's decision absent a showing of an abuse of discretion." *State v. Chambers*, 9th Dist. Wayne No. 17AP0032, 2018-Ohio-5050, ¶ 17.

{¶24} Mr. Robinson argues that the trial court failed to analyze the appropriate factors when it determined whether to grant him a continuance. He also argues that it used his refusal to waive his speedy trial rights as a reason to justify not issuing a continuance. According to Mr. Robinson, a speedy trial waiver is not a condition precedent for continuing a trial. He points out that, under Section 2945.72, a continuance at his request tolls his speedy trial time.

{¶25} In *Unger*, the Ohio Supreme Court recognized that there are no mechanical tests for deciding when the denial of a continuance violates due process. *Unger* at 67, citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). It explained, however, that a court should note:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance

which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id*. at 67-68. "This Court examines the same factors in its review of the trial court's decision relative to the motion for continuance." *R.H. v. J.H.*, 9th Dist. Medina No. 18CA0115-M, 2020-Ohio-3402, ¶ 7.

{¶26} At his first court appearance in December 2018, the trial court appointed an attorney to represent Mr. Robinson, pending his submission of an affidavit of indigency. The State, however, raised a concern that Mr. Robinson might have enough resources to hire his own attorney. At the next hearing in January, the court allowed appointed counsel to continue to represent Mr. Robinson even though Mr. Robinson had not yet filed an affidavit of indigency. At the final pretrial, 13 days before the start of trial, Mr. Robinson appeared with his court-appointed attorney as well as new counsel, who had been hired by Mr. Robinson's father. Mr. Robinson's new counsel moved for a continuance, but the State opposed the motion because it had already sent out around 40 subpoenas for the trial date. The court noted that the State had also continued a murder case and a serious drug trafficking case to make room for Mr. Robinson's trial. The State confirmed that the court was correct and explained that a continuance would create a domino effect because it was too late to move another trial into the slot that had been created for Mr. Robinson's case. Mr. Robinson's new counsel then explained that Mr. Robinson would not sign a waiver of his speedy trial time even though he had been advised that, if his case was continued, the State might not be available to try his case for several months. New counsel also told the court that he had explained to Mr. Robinson that it might take him three or four months to get up to speed on the case. The court likewise explained that it might not be able to set a trial in three or four months unless it again moved other cases with their own time problems. Mr. Robinson's new counsel then told the court that he might not be able to prepare for trial in 13 days and that he would talk to Mr.

Robinson again, but that he might have to withdraw if he felt that was the case, noting that Mr. Robinson's court-appointed counsel did not have concerns about being ready to go forward. The court replied that it would grant the attorney's motion to withdraw if he filed one, but that it was going to leave both of Mr. Robinson's attorneys as co-counsel for the time being. The court also explained to Mr. Robinson that, even if he waived his right to a speedy trial, it was not inclined to move the trial only 13 days before it was set to begin.

{¶27} Mr. Robinson's new counsel did not move to withdraw and on the first day of trial, the court explained that, because Mr. Robinson had private counsel, his appointed counsel would only serve in a stand-by role. Mr. Robinson's attorney moved to continue the trial again, arguing that he had not received discovery from the State and had not had time to adequately prepare a defense in terms of hiring expert witnesses or calling some potential witnesses, even though he had done nothing but work on the case since he had gotten involved with it. The trial court overruled the motion, noting the factors from *Unger* that should be considered in evaluating a motion for continuance. It explained that it had tried to balance Mr. Robinson's right to have counsel of his choosing with his unremitted demand for a speedy trial, which he had not agreed to waive for a reasonable time despite requesting a continuance. The court also noted that Mr. Robinson's stand by counsel had indicated that he was prepared to try the case and had not requested a continuance, and that it had given Mr. Robinson's lead counsel leave to withdraw. It also explained that it had reviewed its docket and would not be able to set a new trial for seven or eight months, which it would not do unless Mr. Robinson waived his right to a speedy trial and acknowledged that he could not have, as he requested, the trial rescheduled in 60 days.

{¶28} Although the trial court did not specifically comment on each of the factors identified in *Unger*, it did note the length of delay that had been requested and that would be

required because of the court's availability. It also noted the inconvenience to the State if it rescheduled the trial, the fact that it was Mr. Robinson's retention of new counsel that led to the alleged need for a continuance, and Mr. Robinson's refusal to grant any type of waiver of his speedy trial time. Upon review of the record, we cannot say that the trial court exercised improper discretion when it denied Mr. Robinson's motion to continue. Mr. Robinson's fifth assignment of error is overruled.

III.

{¶29} Mr. Robinson's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT


CALLAHAN, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

RHYS B. CARTWRIGHT-JONES, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.