[Cite as *State v. Moore*, 2021-Ohio-54.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 29581 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOVONTA DELMAR MOORE | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2019-04-1369 |

DECISION AND JOURNAL ENTRY

Dated: January 13, 2021

HENSAL, Judge.

{¶1} Jovonta Moore appeals his convictions for felony murder and felonious assault from the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

{¶2} There was no dispute at trial that Mr. Moore shot and killed the victim in this case on March 31, 2019. According to Mr. Moore, he shot the victim in self-defense. According to the State, Mr. Moore did not shoot the unarmed victim in self-defense. While many facts were in dispute at trial, the following facts were not.

{¶3} Mr. Moore has two children with K.L., his former girlfriend. During their relationship, K.L.'s mother, S.H., treated Mr. Moore like a son. When K.L. and Mr. Moore broke up, Mr. Moore continued to visit his children at S.H.'s house, and S.H. continued to treat him like a son.

{¶4}    K.L. then started dating the victim, who was also dating A.T.  The victim had a daughter from a previous relationship.  At the time of the shooting, Mr. Moore and the victim had known each other for about a month.  There was no dispute that they did not get along.  According to Mr. Moore, the victim seemed to have a problem with the fact that he (Mr. Moore) would visit his kids at S.H.'s house while K.L. was there.  According to the witnesses' interviews with the police and/or their testimony at trial, each man had threatened to harm the other at one point prior to the fatal shooting.

{¶5}    At trial, witnesses primarily testified as to events that occurred on three separate dates: March 23, 2019, March 25, 2019, and March 31, 2019.  Each event involved an altercation between the victim and Mr. Moore.  We will address each event in turn.

{¶6}    On March 23, 2019, one of S.H.'s neighbors heard several gunshots while she was making breakfast in her kitchen.  When the neighbor looked outside, she saw a man standing in the middle of the street arguing with someone who was standing on the front porch of S.H.'s house.  The neighbor did not recognize either person, nor did she see who fired the shots.  The man in the street then got into his car and sped off.  The police arrived shortly thereafter.  S.H. denied that her house was involved in the incident, and the police made no arrests.

{¶7}    Mr. Moore initially told the police that the victim had been the person in the street on March 23, 2019, and that he (the victim) had fired several shots into the air.   At trial, however, Mr. Moore admitted that he had been the person in the street, and that he had fired the shots.  More specifically, he testified that the victim was standing on the front porch of S.H.'s house, that he (Mr. Moore) was standing outside of his car that was stopped in the street, and that they were arguing back and forth. He testified that the victim was threatening him and that, although he was not sure whether the victim had a gun on him, he looked like he was clutching something.  Mr.

Moore testified that he fired the shots into the air to startle the victim and allow him (Mr. Moore) time to get back into his car and leave. We now turn to the events that occurred on March 25, 2019.

{¶8} According to K.L., S.H., and Mr. Moore, they went to Save-A-Lot on March 25, 2019 to buy groceries. S.H. was driving, and Mr. Moore was in the passenger's seat. As Mr. Moore was stepping out of the car, S.H. noticed that the victim had pulled up in a car behind them. S.H. immediately pulled Mr. Moore back into the car and started to drive off. According to S.H., the victim had a gun on him. The victim then chased S.H.'s car, and S.H. ran several red lights and made a U-turn in order to avoid him. The victim later showed up at S.H.'s house and started yelling for Mr. Moore to come outside and fight. The victim had friends with him, one of whom appeared to have a gun. Mr. Moore stayed inside, and the victim and his friends eventually left.

{¶9} According to A.T., she had been with the victim on March 25, 2019, and he did not have a gun on him. A.T. testified that – through a video call between Mr. Moore and the victim that day – she saw Mr. Moore waving a gun saying he was going to kill the victim and his daughter. K.L. also recalled that Mr. Moore had threatened to kill the victim and his daughter. According to S.H. and another witness (whom S.H. had asked to testify and who previously lied to the police about knowing Mr. Moore), they heard the victim say that he was going to kill Mr. Moore. We now turn to the night of the fatal shooting.

{¶10} On March 31, 2019, Mr. Moore shot and killed the victim. While that fact was not in dispute, the witnesses at trial provided varying versions of the events leading up to the shooting. Many of the versions of the events also varied from the previous versions those witnesses had told the police. Certain facts, however, were not in dispute.

{¶11} There was no dispute that Mr. Moore was at S.H.'s house on March 31, 2019 for a family dinner. K.L. and her children (whom she shares with Mr. Moore) were also there. According to A.T., she and the victim drove to S.H.'s house because K.L. had not been answering the victim's calls, and he wanted to see if K.L. was there. When they arrived, the victim exited the car and knocked on the back door of S.H.'s house. A.T. stayed in the car. When no one answered the back door, the victim ran around to the front of S.H.'s house and entered through the front door. While inside, Mr. Moore and the victim began arguing, and S.H. eventually told both of them to leave. The victim exited the house first, and Mr. Moore followed closely behind. What happened next varied between the witnesses.

{¶12} According to A.T., she heard K.L. calling for her so she got out of the car. When she did, she saw Mr. Moore standing on the porch talking on his cell phone and pointing a gun at the victim, who was standing on the front porch steps. A.T. testified that the victim was unarmed, but that she could tell he wanted to fight Mr. Moore. The victim then made a movement toward Mr. Moore. Mr. Moore fired several shots at the victim as the victim was ascending the front porch steps. A.T. testified that the victim appeared to raise his arm over his chest to shield himself immediately prior to Mr. Moore shooting him.

{¶13} According to K.L.'s initial interview with the police on the night of the shooting, the victim and Mr. Moore had been arguing inside of her mother's (S.H.) house. She and S.H. tried to diffuse the situation, but Mr. Moore eventually got out his gun. K.L. then went outside to get A.T., who was still in the car, so that A.T. could also help diffuse the situation. The victim then exited S.H.'s house, and Mr. Moore was right behind him talking on his cell phone. Mr. Moore then pointed the gun at the victim. K.L. stated that the victim moved his arm over his chest

to protect himself and tried to push the gun away from Mr. Moore. Mr. Moore then "opened fire" and began shooting at the victim while he (Mr. Moore) was still on the phone.

{¶14} At trial, however, K.L. provided a different version of the events. She testified that she previously lied to the police because she and Mr. Moore did not get along, and she wanted him to look bad. She testified that, after the victim went down the front porch steps, he turned and shoved her into the yard, leapt over the steps, and charged at Mr. Moore. She testified that Mr. Moore was holding his cell phone when he shot the victim, but was not on it. The video of K.L.'s interview with the police was played at trial, and the State highlighted the numerous inconsistencies between her initial statement to the police and her testimony at trial. We now turn to the statements and testimony of K.L.'s mother, S.H.

{¶15} When the police arrived after the fatal shooting, S.H. denied seeing the shooting or knowing Mr. Moore's real name; she only identified him by his street name, Woo. The next day, however, she went to the police and acknowledged that she initially did not tell the whole truth. S.H. told the police that she had told the victim and Mr. Moore to get out of her house because they were arguing. The victim left through the front door and ran down the front porch steps, all while threatening to beat up Mr. Moore. The next thing she knew, the victim hopped and/or ran back up the porch steps and went to attack Mr. Moore. At that point, Mr. Moore drew his gun from his pocket and shot the victim. S.H. acknowledged that she did not see the victim with a gun that night. At no point during that interview did S.H. indicate that the victim had threatened to kill Mr. Moore. At trial, however, S.H. testified that she had heard the victim threaten to kill Mr. Moore on a previous occasion, and that the victim tried to attack Mr. Moore while they were still inside her home on March 31, 2019.

{¶16} After his arrest for murder, a detective with the Akron Police Department interviewed Mr. Moore. Mr. Moore initially denied knowing anything about the fatal shooting. After the detective told him that other witnesses had identified him as the shooter, he acknowledged that he shot the victim, but claimed he acted in self-defense. According to Mr. Moore, the victim charged at him and, because he did not know what the victim was about to do to him, he shot him. He then panicked, got into his car, and fled the scene. At no point during that interview did Mr. Moore indicate that the victim had threatened to kill him. At trial, however, Mr. Moore stated for the first time that he thought his life was in danger, and that the victim told him he was a dead man, and that he (the victim) was going to kill him. Mr. Moore also stated for the first time that, while he was inside S.H.'s house, the victim had used his hand to make a shooting gesture toward him. Mr. Moore acknowledged, however, that the victim was unarmed. When the State presented Mr. Moore with the transcript of his initial interview with the police during his cross-examination, Mr. Moore acknowledged that he had lied several times during that interview. Mr. Moore insisted, however, that he shot the victim out of fear that the victim would hurt or kill him.

{¶17} The jury ultimately found Mr. Moore guilty of one count of felony murder under Revised Code Section 2903.02(B), one count of felonious assault under Section 2903.11(A)(1), and one count of felonious assault under Section 2903.11(A)(2), all with accompanying firearm specifications. The jury found Mr. Moore not guilty of murder under Section 2903.02(A). He now appeals, raising four assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN
A FINDING OF GUILT FOR MURDER, PURSUANT TO R.C. 2903.02(B) AND

FELONIOUS ASSAULT, PURSUANT TO R.C. 2903.11(A)(1) OR R.C. 2903.11(A)(2).

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

{¶18}  In his first and third assignments of error, Mr. Moore challenges the sufficiency of the evidence presented at trial, as well as the trial court's denial of his motion under Criminal Rule 29, respectively.  "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.  This Court, therefore, will address Mr. Moore's first and third assignments of error together.

{¶19}  In his first assignment of error, Mr. Moore argues that the State failed to present sufficient evidence to support his convictions for felony murder and felonious assault.  In his third assignment of error, Mr. Moore argues that the trial court erred by denying his motion to acquit under Criminal Rule 29.  In support of both assignments of error, Mr. Moore argues that the evidence presented at trial clearly showed that he acted in self-defense[1] and that, even if the jury rejected his self-defense claim, the evidence – at most – established that he committed aggravated assault and manslaughter.  For the reasons that follow, we reject Mr. Moore's arguments.

{¶20}  Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of

---

[1] Mr. Moore also mentions the defense of defense-of-others, but he has not developed a meaningful argument in that regard.  *See* App.R. 16(A)(7).

the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶21}** As previously noted, Mr. Moore was convicted of felonious assault under Sections 2903.11(A)(1) and 2903.11(A)(2). Those sections provide that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or * * * [c]ause * * * physical harm to another * * * by means of a deadly weapon[.]" "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Evidence that a defendant fired a gun in a person's direction is sufficient evidence that the defendant acted knowingly for the purpose of a felonious assault conviction." (Alteration omitted.) *State v. Ivery*, 9th Dist. Summit No. 28551, 2020-Ohio-3349, ¶ 13, quoting *State v. Fox*, 10th Dist. Franklin No. 17AP-295, 2018-Ohio-501, ¶ 14.

**{¶22}** Section 2903.02(B), also under which Mr. Moore was convicted, governs felony murder. It provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not [voluntary manslaughter] or [involuntary manslaughter]." R.C. 2903.02(B). Voluntary manslaughter occurs when a person knowingly causes the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force[.]" R.C. 2903.03. Involuntary manslaughter occurs, in part, when a person causes the death of another "as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). The distinguishing factor between felony murder and involuntary manslaughter is the mental state involved in the act. *State v. Lynch*, 98 Ohio St.3d

514, 2003-Ohio-2284, ¶ 79. "[A] person commits felony murder * * * by proximately causing another's death while possessing the mens rea element set forth in the underlying felony offense." *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 43. For involuntary manslaughter under Section 2903.04(A), "[i]f the offender commits a felony offense with the requisite culpability and a death results proximately therefrom, the state has met its burden." *State v. Hill*, 8th Dist. Cuyahoga No. 106017, 2018-Ohio-1401, ¶ 10.

{¶23} Regarding Mr. Moore's argument that the evidence established that he acted in self-defense, this Court notes that, on March 28, 2019, amendments to Section 2901.05 went into effect that changed the burden of going forward and burden of proof as to self-defense. These amendments "changed self-defense from an affirmative defense that a defendant must prove to a burden that the prosecution must carry to show that the defendant did not use force in self-defense." *State v. Robinson*, 9th Dist. Lorain No. 19CA011495, 2020-Ohio-4502, ¶ 17, citing R.C. 2901.05(A), (B)(1). "Consequently, once there is evidence presented at trial that tends to support that the defendant acted in self-defense, the State must disprove one of the elements of self-defense beyond a reasonable doubt." *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10.

{¶24} Mr. Moore's trial occurred after the amendments to Section 2901.05 went into effect, and the trial court instructed the jury under the new self-defense law. Mr. Moore's merit brief, however, relies upon pre-amendment self-defense law, and this Court will not develop an argument based upon the new law on his behalf. *See State v. Bramos*, 9th Dist. Medina No. 19CA0061-M, 2020-Ohio-1169, ¶ 11 ("This Court will not create or develop an argument on [the appellant's] behalf."). We now turn to his argument that the evidence established, at most, that he committed aggravated assault and manslaughter.

{¶25} As previously noted, an offender commits voluntary manslaughter when that person knowingly causes the death of another "while under the influence of sudden passion or in a sudden fit of rage[.]" R.C. 2903.03. An offender commits involuntary manslaughter with the predicate offense of aggravated assault when the offender causes the death of another as a proximate result of committing aggravated assault. R.C. 2903.04(A) (providing that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing * * * a felony."); R.C. 2903.12(B) (providing that aggravated assault is a felony). Aggravated assault under Section 2903.12 requires that the offender be "under the influence of sudden passion or in a sudden fit of rage[.]" R.C. 2903.12(A).

{¶26} There was no dispute at trial that Mr. Moore knowingly shot the victim, which resulted in the victim's death. As the State points out, Mr. Moore, along with the other witnesses who testified at trial, provided no testimony indicating that Mr. Moore shot the victim while under the influence of sudden passion or in a sudden fit of rage. The defense's theory at trial, which was supported by Mr. Moore's own testimony, was that Mr. Moore shot the victim out of fear because the victim was about to attack him. Having reviewed the record, we conclude that sufficient evidence existed to support Mr. Moore's convictions for felony murder and felonious assault. Accordingly, Mr. Moore's first and third assignments of error are overruled.

ASSIGNMENT OF ERROR II

THE VERDICT OF GUILTY FOR MURDER AND FELONIOUS ASSAULT
WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶27} In his second assignment of error, Mr. Moore argues that his convictions for felony murder and felonious assault were against the manifest weight of the evidence. This Court disagrees.

{¶28} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶29} Mr. Moore argues that the evidence presented at trial indicated that he acted in self-defense, or that – at most – he should have been convicted of manslaughter because the victim's actions against him amounted to serious provocation. We will address each argument in turn.

{¶30} Regarding his self-defense argument, Mr. Moore has not argued that the evidence weighed heavily against a conclusion that the State disproved one of the elements of self-defense beyond a reasonable doubt, which is the standard under the post-amendment self-defense law. R.C. 2901.05(B)(1); *Williams*, 2020-Ohio-3269, at ¶ 10, 32 (applying the post-amendment self-defense law to a manifest-weight challenge, and concluding that the evidence did not weigh heavily against the conclusion that the State disproved the elements of self-defense). In fact, other than law relating to the manifest-weight standard, his second assignment of error contains no law in support of his position. *See* App.R. 16(A)(7) (requiring an appellant's brief to include "citations to the authorities * * * on which appellant relies."). This Court will not create a manifest-weight argument under the post-amendment self-defense law on Mr. Moore's behalf. *See Bramos*, 2020-

Ohio-1169, at ¶ 11 ("This Court will not create or develop an argument on [the appellant's] behalf.").

**{¶31}** Regarding Mr. Moore's argument that he should have been convicted of manslaughter because the victim's actions against him amounted to serious provocation, we reject that argument. As we noted in our analysis of Mr. Moore's first and third assignments of error, Mr. Moore, along with the other witnesses who testified at trial, provided no testimony indicating that Mr. Moore shot the victim while under the influence of sudden passion or in a sudden fit of rage. The defense's theory at trial, which was supported by Mr. Moore's own testimony, was that Mr. Moore shot the victim out of fear because the victim was about to attack him. We, therefore, reject Mr. Moore's argument.

**{¶32}** Having reviewed the entire record, we conclude that this is not the exceptional case in which the evidence at trial weighed heavily against Mr. Moore's convictions. Mr. Moore's second assignment of error is overruled.

ASSIGNMENT OF ERROR IV

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE FROM HIS TRIAL COUNSEL, WHO FAILED TO REQUEST JURY INSTRUCTIONS FOR MANSLAUGHTER AND AGGRAVATED ASSAULT.

**{¶33}** In his fourth assignment of error, Mr. Moore argues that his trial counsel provided ineffective assistance because he did not request jury instructions for aggravated assault or manslaughter. He argues that the evidence at trial clearly established that he shot the victim as a result of serious provocation. He also argues that the importance of requesting aggravated assault and manslaughter jury instructions is evidenced by the fact that the jury was deadlocked on the murder count under Section 2903.02(A).

{¶34} To prevail on a claim of ineffective assistance of counsel, Mr. Moore must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Moore must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio- 8025, ¶ 138.

{¶35} "Generally, the failure to request jury instructions is purely a matter of trial tactics and will not be disturbed upon review." *State v. Herrington*, 9th Dist. Summit No. 25150, 2010-Ohio-6455, ¶ 11. This is especially so in cases where the jury instruction at issue would have undermined or been inconsistent with the defense's theory of the case. *See, e.g.*, *id.* (holding that the decision to not request a jury instruction that would have been inconsistent with defense counsel's theory of the case "fell within the purview of trial tactics and did not equate to ineffective assistance of counsel."); *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, ¶ 24 (concluding that trial counsel did not provide ineffective assistance by not requesting a jury instruction that would have undermined counsel's trial strategy).

{¶36} Here, Mr. Moore repeatedly testified that he shot the victim in self-defense because he was afraid of what the victim was about to do to him. Now, for the first time on appeal, he argues that the victim's actions amounted to serious provocation. Yet "a theory of self-defense is incompatible with a theory of aggravated assault, because the former requires proof of defendant's fear or apprehension while the latter requires a showing of serious provocation or rage." *State v. Fedrick*, 9th Dist. Summit No. 28120, 2017-Ohio-2635, ¶ 12, quoting *State v. Cremeans*, 9th Dist. Summit No. 22009, 2005-Ohio-261, ¶ 16. Given the testimony presented at trial – including Mr. Moore's own recitation of the events – we cannot say that Mr. Moore's trial counsel provided ineffective assistance by not requesting jury instructions for aggravated assault, voluntary manslaughter, or involuntary manslaughter with the predicate offense of aggravated assault, all of which required proof that Mr. Moore acted "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim * * *." R.C. 2903.12, R.C. 2903.03, and R.C. 2903.04; *see also Fedrick* at ¶ 8-9 (addressing circumstances when a trial court is required to instruct the jury on aggravated assault in a felonious assault case). Mr. Moore's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT DENIED DEFENDANT DUE PROCESS AND COMMITTED PLAIN ERROR BY NOT GIVING THE JURY INSTRUCTIONS FOR MANSLAUGHTER AND AGGRAVATED ASSAULT AFTER SIGNIFICANT TESTIMONY ABOUT THE DECED[E]NT'S THREATENING AND ABUSIVE ACTIONS AND BEHAVIOR TOWARD APPELLANT.

{¶37} In his fifth assignment of error, Mr. Moore argues that the trial court committed plain error by not sua sponte instructing the jury on aggravated assault and manslaughter. We disagree.

{¶38} "To establish plain error, a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial." *Mohamed*, 2017-Ohio-7468, at ¶ 26, citing, *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). In light of this Court's resolution of Mr. Moore's fourth assignment of error, we hold that Mr. Moore has failed to establish that the trial court committed plain error by not instructing the jury on aggravated assault or manslaughter. *Mohamed* at ¶ 27 ("When the decision not to request a particular jury instruction may be deemed to be part of a reasonable trial strategy, we will not find plain error."). Mr. Moore's fifth assignment of error is overruled.

III.

{¶39} Mr. Moore's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.